STEVE W. BERMAN (*pro hac vice to be filed*)
THOMAS E. LOESER (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com

PETER B. FREDMAN
LAW OFFICE OF PETER FREDMAN
125 University Ave, Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile:  (510) 868-2627
peter@peterfredmanlaw.com

*Attorneys for Plaintiff David Fiol and the
proposed class*

*[Additional counsel listed on signature page.]*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID FIOL, on behalf of himself and all others similarly situated, | Case No. |
| | CLASS ACTION |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.  FACTUAL ALLEGATIONS ........................................................................................ 1

II.  JURISDICTION ....................................................................................................... 4

III.  VENUE ................................................................................................................... 4

IV.  PARTIES ................................................................................................................. 4

    A.  Plaintiff David Fiol ........................................................................................ 4

    B.  Defendant ...................................................................................................... 5

V.  TOLLING OF THE STATUTE OF LIMITATIONS ............................................... 6

VI.  CLASS ALLEGATIONS ......................................................................................... 8

VII.  VIOLATIONS ALLEGED ....................................................................................... 11

    A.  Claims Brought on Behalf of the Nationwide Class ................................... 11

COUNT I FRAUD BY CONCEALMENT ........................................................................ 11

    B.  Claims Brought on Behalf of the California Subclass .................................. 15

COUNT I VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.) ................................................................. 15

COUNT II VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*) ....................................................................... 16

COUNT III VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, ET SEQ.) ................................................................. 18

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CAL. COM. CODE § 2314) ................................................................................................. 19

COUNT V BREACH OF CONTRACT  (BASED ON CALIFORNIA LAW) ................ 20

COUNT VI FRAUD BY CONCEALMENT (BASED ON CALIFORNIA LAW) .......... 21

COUNT VII VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CAL. CIV. CODE §§ 1791.1 & 1792) ............................................................................... 25

REQUEST FOR RELIEF ................................................................................................... 27

DEMAND FOR JURY TRIAL .......................................................................................... 27

- i -

Plaintiff David Fiol ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), allege the following:

## I.   FACTUAL ALLEGATIONS

1.     The United States Government, through the Environmental Protection Agency, has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these US laws and must adhere to EPA rules and regulations.  This case arises because Defendant Volkswagen Group of America ("Volkswagen") purposeful and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that purposefully evaded federal and state laws.  As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."  Yet that is exactly what Volkswagen did in its 2009-20015 Volkswagen and Audi diesel vehicles.[1]

2.     As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed.  This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations.  The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

3.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to

---

[1] *See* Sept. 18, 2015 EPA News Release.

SECOND AMENDED CLASS ACTION COMPLAINT
809822 V1

Case No. 13-cv-3072-EMC

respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

4.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.  Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control system during normal driving conditions, cannot be certified.  By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

5.     According the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.  Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

6.     Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "CleanDiesel."  For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780.  The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860.  The CleanDiesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

7.     These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing.  The table below sets forth the price premium for each base, mid-level and top-line trim for each affected model:

CLASS ACTION COMPLAINT
809822 V1

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| *VW Jetta* | $2,860 | $4,300 | $6,315 |
| *VW Beetle* | $4,635 | n/a | $2,640 |
| *VW Golf* | $2,950 | $1,000 | $1,000 |
| *VW Passat* | $5,755 | $4,750 | $6,855 |
| *Audi A3* | $2,805 | $3,095 | $2,925 |

8.  Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency.  As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.  This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

9.  As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics

of their vehicles when purchased.  Moreover, affected vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

10.     Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles.  Plaintiff seeks damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the "defeat device," as alleged in this complaint.

## II.      JURISDICTION

11.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.      VENUE

12.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Plaintiff Fiol resides in this District, purchased his Affected Vehicle in this District, and Volkswagen has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV.      PARTIES

**A.      Plaintiff David Fiol**

13.     Plaintiff David Fiol is an individual residing in Novato, Marin County, California.  In the fall of 2011, Plaintiff purchased a new 2012 Volkswagen Jetta Sportswagon CleanDiesel from Stevens Creek Volkswagen, an authorized Volkswagen dealer in San Jose, California.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time he purchased his vehicle, it was equipped with an emissions control "defeat device" which caused his vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his

- 4 -

vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

14.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the "CleanDiesel" system, as represented through advertisements and representations made by Volkswagen.  Specifically, prior to his purchase of the vehicle, Plaintiff viewed television advertisements regarding the CleanDiesel and a representative of Stevens Creek Volkswagen made verbal representations about the CleanDiesel system to Plaintiff.   He recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the "defeat device" or that Volkswagen had purposefully falsified its certification of EPA compliance.  Had Volkswagen disclosed that the CleanDiesel in his vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, he would not have purchased his vehicle with the CleanDiesel engine, or would have paid less for the vehicle.

15.     Plaintiff has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value of his vehicle.

16.     Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the "defeat device" and/or defective design of the CleanDiesel engine prior to purchase.

**B.     Defendant**

17.     Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names throughout the United States.  Volkswagen and/or its agents designed, manufactured, and installed

- 5 -

the CleanDiesel engine systems in the Affected Vehicles, which included the "defeat device." Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V.   TOLLING OF THE STATUTE OF LIMITATIONS

### A.   Discovery Rule Tolling

18.     Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device."  It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part.  As reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests.  Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers.  This is the quintessential case for tolling.

19.     Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emissions qualities of its vehicles.

20.     Plaintiff and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiff only shortly before this action was filed.  Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiff and other Class members had placed in its representations, or that, necessarily, Volkswagen actively

discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

21.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B.      Fraudulent Concealment Tolling**

22.     All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

23.     Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C.      Estoppel**

24.     Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

25.     Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

26.     Volkswagen was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

27.     Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

- 7 -

# VI.    CLASS ALLEGATIONS

28.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclass (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The California Subclass**

All persons or entities in the state of California who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

29.    Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system.  Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

30.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

31.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

32.    <u>Numerosity</u>.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are not less than hundreds of

- 8 -

thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Volkswagen's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

33.   <u>Commonality and Predominance</u>:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

  a) Whether Volkswagen engaged in the conduct alleged herein;

  b) Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

  c) Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with US EPA requirements;

  d) Whether the CleanDiesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

  e) Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

  f) Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

  g) Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

  h) Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

  k) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

  l) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

- 9 -

34.     <u>Typicality</u>:  Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

35.     <u>Adequacy</u>:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

36.     <u>Declaratory and Injunctive Relief</u>:  Federal Rule of Civil Procedure 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

37.     <u>Superiority</u>:  Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for Nationwide and California Subclass members to individually seek redress for Volkswagen's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT
809822 V1

## VII.   VIOLATIONS ALLEGED

**A.**   **Claims Brought on Behalf of the Nationwide Class**

### COUNT I
### FRAUD BY CONCEALMENT

38.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

39.     This claim is brought on behalf of the Nationwide Class.

40.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

41.     Plaintiff and Nationwide Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and Nationwide Class members did not, and could not, unravel Volkswagen's deception on their own.

42.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiff and Nationwide Class members placed in its representations.  As one customer, Priya Shah, put it in a

- 11 -

quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "clean" diesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

43.     Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Nationwide Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and Nationwide Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

44.     Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Nationwide Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state

clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Nationwide Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiff and Nationwide Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

45.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Nationwide Class members.

46.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Nationwide Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

47.     Plaintiff and Nationwide Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Nationwide Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Nationwide Class members.

48.     Because of the concealment and/or suppression of the facts, Plaintiff and Nationwide Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and Nationwide Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

49.     The value of Plaintiff's and Nationwide Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Nationwide Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

50.     Accordingly, Volkswagen is liable to Plaintiff and Nationwide Class members for damages in an amount to be proven at trial.

51.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Nationwide Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

52.     Plaintiff pleads this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Nationwide Class.  As necessary, and in the alternative, Plaintiff stands ready to plead sub-classes, based on the residences at pertinent times of members of the Nationwide Class, to allege fraudulent concealment under the laws of states other than Virginia.

CLASS ACTION COMPLAINT
809822 V1

**B.      Claims Brought on Behalf of the California Subclass**

**COUNT I**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)**

53.      Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

54.      Plaintiff brings this Count on behalf of the California Subclass.

55.      California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

56.      Volkswagen's conduct, as described herein, was and is in violation of the UCL. Volkswagen's conduct violates the UCL in at least the following ways:

      i.      By knowingly and intentionally concealing from Plaintiff and the other California Subclass members that the Affected Vehicles suffer from a design defect while obtaining money from Plaintiff and the Class;

      ii.      By marketing Affected Vehicles as possessing functional and defect-free, EPA compliant CleanDiesel engine systems;

      iii.      By purposefully installing an illegal "defeat device" in the Affected Vehicles to fraudulently obtain EPA certification and cause Affected Vehicles to pass emissions tests when in truth and fact they did not pass such tests;

      iv.      By violating federal laws, including the Clean Air Act; and

      vi.      By violating other California laws, including California laws governing vehicle emissions and emission testing requirements.

57.      Volkswagen's misrepresentations and omissions alleged herein caused Plaintiff and the other California Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other California Subclass members would not have purchased or leased these vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive

1    alternative vehicles that did not contain CleanDiesel engine systems that failed to comply with EPA

2    and California emissions standards.

3        58.    Accordingly, Plaintiff and the other California Subclass members have suffered

4    injury in fact including lost money or property as a result of Volkswagen's misrepresentations and

5    omissions.

6        59.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices

7    by Volkswagen under Cal. Bus. & Prof. Code § 17200.

8        60.    Plaintiff requests that this Court enter such orders or judgments as may be necessary

9    to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices and to restore

10   to Plaintiff and members of the Class any money it acquired by unfair competition, including

11   restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and

12   Cal. Civ. Code § 3345; and for such other relief set forth below.

13                            **COUNT II**
     **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
14                   **(CAL. CIV. CODE §§ 1750,** *et seq.***)**

15       61.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

16   herein.

17       62.    Plaintiff brings this Count on behalf of the California Subclass.

18       63.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et*

19   *seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken

20   by any person in a transaction intended to result or which results in the sale or lease of goods or

21   services to any consumer."

22       64.    The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

23       65.    Plaintiff and the other California Subclass members are "consumers" as defined in

24   Cal. Civ. Code § 1761(d), and Plaintiff, the other California Subclass members, and Volkswagen are

25   "persons" as defined in Cal. Civ. Code § 1761(c).

26       66.    As alleged above, Volkswagen made numerous representations concerning the

27   benefits, efficiency, performance and safety features of CleanDiesel engine systems that were

28   misleading.

- 16 -

67.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other California Subclass members were deceived by Volkswagen's failure to disclose that the Affected Vehicles were equipped with defective CleanDiesel engine systems that failed EPA and California emissions standards.

68.    Volkswagen's conduct, as described hereinabove, was and is in violation of the CLRA.  Volkswagen's conduct violates at least the following enumerated CLRA provisions:

      i.     Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

      ii.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

      iii.   Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

      iv.   Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

69.    Plaintiff and the other California Subclass members have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Affected Vehicles and because they stand to pay additional fuel costs if and when their Affected Vehicles are made to comply with emissions standards.

70.    Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Affected Vehicles were not suitable for their intended use.

71.    The facts concealed and omitted by Volkswagen to Plaintiff and the other California Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price.  Had Plaintiff and the other California Subclass members known about the defective nature of the Affected Vehicles, they would not have purchased or leased the Affected Vehicles or would not have paid the prices they paid.

CLASS ACTION COMPLAINT

72.     Plaintiff has provided Volkswagen with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to Volkswagen on September 18, 2015.

73.     Plaintiff's and the other California Subclass members' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices.

74.     Therefore, Plaintiff and the other California Subclass members are entitled to equitable and monetary relief under the CLRA.

**COUNT III**
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)**

75.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

76.     Plaintiff brings this Count on behalf of the California Subclass.

77.     California Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

78.     Volkswagen caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

79.     Volkswagen has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of  Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

- 18 -

80.     Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Affected Vehicles, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, performance and reliability of the Affected Vehicles.  Volkswagen's representations turned out not to be true because the Affected Vehicles are distributed with faulty and defective CleanDiesel engine systems, rendering certain safety and emissions functions inoperative.  Had Plaintiff and the other Class members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.  Accordingly, Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

81.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business.  Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

82.     Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

83.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

84.     Plaintiff brings this Count on behalf of the California Subclass.

85.     Volkswagen is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

86.     A warranty that the Affected Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

- 19 -

87.     These Affected Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Affected Vehicles are inherently defective in that they do not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative; and the CleanDiesel engine system was not adequately designed, manufactured, and tested.

88.     Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

89.     Plaintiff and the other Class members have had sufficient direct dealings with either Volkswagen or their agents (dealerships) to establish privity of contract between Plaintiff and the other Class members.  Notwithstanding this, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiff's and the other Class members' Affected Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

90.     As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT V**
**BREACH OF CONTRACT**
**(BASED ON CALIFORNIA LAW)**

91.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

92.     Plaintiff brings this Count on behalf of the California Subclass.

93.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other California Subclass members to make their purchases

- 20 -

or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other California Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device."  Accordingly, Plaintiff and the other California Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

94.     Each and every sale or lease of a Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other California Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Affected Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

95.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the California Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VI**
**FRAUD BY CONCEALMENT**
**(BASED ON CALIFORNIA LAW)**

96.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

97.     This claim is brought on behalf of California Subclass members who are California residents.

98.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the

- 21 -

pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

99.     Plaintiff and California Subclass members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and California Subclass members did not, and could not, unravel Volkswagen's deception on their own.

100.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiff and California Subclass members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 15, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." As Ms. Shah put it, "I don't want to be spewing noxious gases into the environment."

101.     Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and California Subclass Members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because

- 22 -

they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and California Subclass Members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

102.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the Affected Vehicles because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or California Subclass Members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and California Subclass members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiff and California Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

103.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not

- 23 -

comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and California Subclass members.

104.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and California Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

105.    Plaintiff and California Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and California Subclass Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or California Subclass Members.

106.    Because of the concealment and/or suppression of the facts, Plaintiff and California Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of millions of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiff and California Subclass members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and California Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

107.    The value of Plaintiff's and California Subclass Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and California Subclass

- 24 -

1    members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected

2    Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3    108.    Accordingly, Volkswagen is liable to Plaintiff and California Subclass members for

4    damages in an amount to be proven at trial.

5    109.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with

6    intent to defraud, and in reckless disregard of Plaintiff' and California Subclass members' rights and

7    the representations that Volkswagen made to them, in order to enrich Volkswagen.  Volkswagen's

8    conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct

9    in the future, which amount is to be determined according to proof.

10   110.    Plaintiff pleads this count pursuant to the law of California on behalf of all members

11   of the California Subclass.

12
13
**COUNT VII**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. CIV. CODE §§ 1791.1 & 1792)**

14
15   111.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

16   herein.

17   112.    Plaintiff brings this Count on behalf of the California Subclass.

18   113.    Plaintiff and the other Class members who purchased or leased the Affected Vehicles

19   in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

20   114.    The Affected Vehicles are "consumer goods" within the meaning of Cal. Civ. Code

21   § 1791(a).

22   115.    Volkswagen is a "manufacturer" of the Affected Vehicles within the meaning of Cal.

23   Civ. Code § 1791(j).

24   116.    Volkswagen impliedly warranted to Plaintiff and the other Class members that its

25   Affected Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792,

26   however, the Affected Vehicles do not have the quality that a buyer would reasonably expect.

27   117.    Cal. Civ. Code § 1791.1(a) states:

28

- 25 -

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)     Pass without objection in the trade under the contract description.

(2)     Are fit for the ordinary purposes for which such goods are used.

(3)     Are adequately contained, packaged, and labeled.

(4)     Conform to the promises or affirmations of fact made on the container or label.

118.     The Affected Vehicles would not pass without objection in the automotive trade because of they do not pass EPA and state law emissions regulations.

119.     Because of the "defeat device" falsely causes Affected Vehicles to obtain EPA certification and pass emissions tests when in fact they omit 40 times the permitted level of NOx, they are not safe to drive and thus not fit for ordinary purposes.

120.     The Affected Vehicles are not adequately labeled because the labeling fails to disclose the "defeat device" that causes emissions systems of the Affected Vehicles to become inoperative during normal use.

121.     Volkswagen breached the implied warranty of merchantability by manufacturing and selling Affected Vehicles containing the "defeat device."  Furthermore, Volkswagen's fraudulent use of the "defeat device" has caused Plaintiff and the other Class members to not receive the benefit of their bargain and have caused Affected Vehicles to depreciate in value.

122.     As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiff and the other Class members. Plaintiff and the other Class members have been damaged as a result of the diminished value of Volkswagen's products, the products' malfunctioning, and the nonuse of their Affected Vehicles.

123.     Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles.

124.    Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and California Subclass, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.    Certification of the proposed Nationwide Class and California Subclass, including appointment of Plaintiff's counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E.    An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F.    An award of costs and attorneys' fees; and

G.    Such other or further relief as may be appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED:  September 18, 2015            HAGENS BERMAN SOBOL SHAPIRO LLP

By _____*/s/ Thomas E. Loeser*_____
       THOMAS E. LOESER
Steve W. Berman (*pro hac vice to be filed*)
Thomas E. Loeser (202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com

- 27 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF PETER FREDMAN

Peter B. Fredman
125 University Ave, Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile:  (510) 868-2627
peter@peterfredmanlaw.com

Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California  94710
Tel: (510) 725-3000
Fax: (510) 725-3001
jefff@hbsslaw.com

*Attorneys for David Fiol and the proposed classes*

- 28 -